F8VPMCLA

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              15 CR 593 (PGG)

5    DOUGLAS McLARTY, BRIAN
     RICHARDS,
6
                  Defendants.
7
     ------------------------------x
8
                                              New York, N.Y.
9                                             August 31, 2015
                                              2:40 p.m.
10

11   Before:

12                   HON. PAUL G. GARDEPHE,

13                                            District Judge

14
                          APPEARANCES
15

16   PREET BHARARA,
          United States Attorney for the
17        Southern District of New York
     MICAH SMITH
18        Assistant United States Attorney

19

20   PATRICK A.H. WATTS
          Attorney for Defendant McLarty

21

22   JOSEPH D. NOHAVICKA
          Attorney for Defendant Richards

23   ALSO PRESENT:  JOHN MOSCATO, Pretrial Services Officer

24

25

F8VPMCLA

1        (In open court)

2        (Case called)

3        MR. SMITH:  Good afternoon, your Honor.  Micah Smith

4   for the government.  With me at counsel table is Pretrial

5   Services Officer John Moscato.

6        MR. WATTS:  Good afternoon, your Honor.  My name is

7   Patrick Watts, and I represent Mr. Douglas McLarty.

8        THE COURT:  How are you, sir.

9        MR. NOHAVICKA:  Good afternoon.  Joseph Nohavicka for

10   defendant Brian Richards.  We are ready.

11        THE COURT:  All right.  I understand the defendants

12   have to be arraigned.  So will they please rise, Mr. McLarty

13   and Mr. Richards.

14        Mr. McLarty, you're here with Mr. Watts as your

15   attorney this afternoon; is that correct?

16        DEFENDANT McLARTY:  Yes.

17        THE COURT:  And, Mr. Richards, you're here with

18   Mr. Nohavicka -- am I pronouncing it right?

19        MR. NOHAVICKA:  It's Nohavicka.  That's all right,

20   your Honor.

21        DEFENDANT RICHARDS:  Yes, your Honor.

22        THE COURT:  I should tell both of you -- well, first

23   of all, I should find out whether you received a copy of the

24   indictment.  Mr. McLarty, have you received a copy of the

25   indictment?

F8VPMCLA

1              DEFENDANT McLARTY:  Yes.

2              THE COURT:  Mr. Richards, have you received a copy of

3    the indictment?

4              DEFENDANT RICHARDS:  No.

5              THE COURT:  All right.  Will somebody give

6    Mr. Richards a copy of the indictment?

7              MR. SMITH:  Yes.  Yes, your Honor.

8              THE COURT:  You can be seated, both of you.

9              (Pause)

10             All right.  I'm going to read the indictment to both

11   of you now.  Count One, the grand jury charges on or about

12   June 20th, 2014, in the Southern District of New York, Douglas

13   McLarty, also known as "Q Don," and Brian Richards, also known

14   as "B Rich," the defendants, and others known and unknown,

15   willfully and knowingly did combine, conspire, confederate and

16   agree together, and with each other, to commit an offense

17   against the United States, to wit, to violate Title 18, United

18   States Code, Section 922(g)(1).

19             It was a part and an object of the conspiracy that

20   Douglas McLarty, also known as "Q Don," the defendant, having

21   previously been convicted in a court of a crime punishable by

22   imprisonment for a term exceeding one year, to wit, attempted

23   murder in the second degree in violation of New York Penal Law

24   sections 110 and 125.25, would and did possess a firearm, to

25   wit, a black .45 caliber pistol, manufactured by Hi-Point,

F8VPMCLA

| | |
|---|---|
| 1 | model JHP, which previously had been shipped and transported in |
| 2 | interstate commerce. |
| 3 | In furtherance of the conspiracy and to effect the |
| 4 | illegal object thereof, the following overt act, among others, |
| 5 | was committed in the Southern District of New York: |
| 6 | On or about June 20th, 2014, Douglas McLarty, also |
| 7 | known as "Q Don," handed the Hi-Point pistol to Brian Richards, |
| 8 | also known as "B Rich," in the vicinity of East 216th Street |
| 9 | and White Plains Road in the Bronx, New York. |
| 10 | Count Two.  The grand jury further charges on or about |
| 11 | June 20, 2014, in the Southern District of New York, Douglas |
| 12 | McLarty, also known as "Q Don," and Brian Richards, also known |
| 13 | as "B Rich," the defendants, knowingly possessed a firearm that |
| 14 | moved in and affected interstate commerce, to wit, the Hi-Point |
| 15 | pistol, at places that McLarty and Richards knew, and had |
| 16 | reasonable cause to believe, were school zones within the |
| 17 | meaning of Title 18, United States Code, Section 921(a)(25)(B), |
| 18 | namely, at places within 1,000 feet of a private kindergarten |
| 19 | and elementary school located at 719 East 216th Street, Bronx, |
| 20 | New York, and within a thousand feet of a public middle school |
| 21 | located at 3710 Barnes Avenue, Bronx, New York. |
| 22 | Count Three.  The grand jury further charges on or |
| 23 | about June 20, 2014, in the Southern District of New York, |
| 24 | Douglas McLarty, also known as "Q Don," the defendant, after |
| 25 | having been previously convicted in a court of a crime |

5

F8VPMCLA

1  punishable by imprisonment for a term exceeding one year, to

2  wit, Attempted Murder in the Second Degree, in violation of

3  New York Penal Law sections 110 and 125.25, knowingly did

4  possess a firearm that moved in and affected commerce, to wit,

5  the Hi-Point pistol.

6          All right.  Mr. McLarty, have you had an opportunity

7  to discuss these charges with your attorney?

8          DEFENDANT McLARTY:  Yes.

9          THE COURT:  And, Mr. Richards, have you had an

10  opportunity to discuss these charges with your attorney?

11          DEFENDANT RICHARDS:  Yes, your Honor.

12          THE COURT:  All right.  Then I'm going to ask you now

13  how you plead as to each count.  Mr. McLarty, with respect to

14  Count One, how do you plead, guilty or not guilty?

15          DEFENDANT McLARTY:  Not guilty.

16          THE COURT:  Mr. Richards, with respect to Count One,

17  how do you plead, guilty or not guilty?

18          DEFENDANT RICHARDS:  Not guilty.

19          THE COURT:  As to Count Two, Mr. McLarty, how do you

20  plead, guilty or not guilty?

21          DEFENDANT McLARTY:  Not guilty.

22          THE COURT:  Mr. Richards, as to Count Two, how do you

23  plead, guilty or not guilty?

24          DEFENDANT RICHARDS:  Not guilty.

25          THE COURT:  And, Mr. McLarty, with respect to Count

F8VPMCLA

```
 1    Three, how do you plead, guilty or not guilty?
 2              DEFENDANT McLARTY:  Not guilty.
 3              THE COURT:  All right.  Mr. Smith, could you give me a
 4    sense of the discovery materials that you'll be providing in
 5    the case?
 6              MR. SMITH:  Yes, your Honor.  Today, before this
 7    proceeding began, I provided counsel for both defendants with a
 8    compact disk that contain our initial production of rule 16
 9    discovery that included not just the charging instruments but
10    also surveillance video taken from the June 2014 shooting, as
11    well as some other documents relating both to the firearm and
12    to other facts relevant to the circumstances surrounding that
13    shooting.
14              There will be, I believe, a few additional
15    surveillance videos that we'll be producing, some other
16    documents relating to the firearm, and a few other documents,
17    for example, relating to criminal history which my agents are
18    both compiling for both defendants.
19              So we're not finished producing rule 16 discovery, but
20    I do believe a sufficient amount of rule 16 discovery has been
21    produced that both defense counsel will be able to use the time
22    between today and when we next appear before your Honor to
23    review that discovery and have a sense of what motions, if any,
24    counsel wish to file.
25              THE COURT:  Now, there's a post-arrest statement that
```

F8VPMCLA

1    Mr. McLarty made, right?

2              MR. SMITH:  Yes, your Honor, there is a post-arrest

3    statement that Mr. McLarty made that was recorded, and I have

4    also produced a copy of that post-arrest statement to counsel.

5              THE COURT:  All right.  I haven't heard that.

6              Mr. Watts, how long do you need in order to determine

7    whether there will be motion practice?

8              MR. WATTS:  Your Honor, I would ask for a month.

9              THE COURT:  All right.  Does that work for you, too,

10   Mr. Nohavicka?

11             MR. NOHAVICKA:  Yes, it does.

12             THE COURT:  Mr. Ruocco, could you give us a date about

13   30 days out.

14             THE DEPUTY CLERK:  Yes, your Honor.  Thursday,

15   October 1st, at 2:30 in the afternoon is available.

16             THE COURT:  Is that available for everybody,

17   October 1st at 2:30?

18             MR. NOHAVICKA:  By Defendant Richards, yes, your

19   Honor.

20             MR. WATTS:  That's fine.

21             MR. SMITH:  And the government.

22             THE COURT:  Does the government wish me to exclude

23   time between now and then?

24             MR. SMITH:  Yes, your Honor.

25             THE COURT:  Any objection, Mr. Watts?

F8VPMCLA

1          MR. WATTS:  No, your Honor.

2          THE COURT:  Mr. Nohavicka?

3          MR. NOHAVICKA:  No, objection, your Honor.

4          THE COURT:  Then I will exclude the time between today

5     and October 1st, 2015, under the Speedy Trial Act pursuant to

6     Title 18, United States Code, Section 3161(h)(7)(A), to permit

7     defense counsel to review the discovery materials from the

8     government and determine whether there will be any pretrial

9     motions.  I do find that the ends of justice served by the

10    granting of this continuance outweigh the best interests of the

11    public and the defendants in a speedy trial.

12         Now, Mr. Nohavicka, I was told before coming down that

13    you wish to make a bail application for Mr. Richards?

14         MR. NOHAVICKA:  That is correct, your Honor.

15         THE COURT:  Are you prepared to proceed now?

16         MR. NOHAVICKA:  I am, but before I did that, I just

17    wanted to make one comment on the appearances.  I believe we

18    have a court appearance within the next few days, if that

19    appearance could just be adjourned to the October 1st.

20         THE COURT:  What do we have on the calendar in the

21    next few days?

22         MR. SMITH:  I think that may be a reference to the

23    preliminary hearing date, your Honor.

24         THE COURT:  Yes.  Mr. Nohavicka, the next appearance

25    in the case will be October 1st.

1      MR. NOHAVICKA:  Thank you, your Honor.  May I proceed?

2      THE COURT:  Please.

3      MR. NOHAVICKA:  Thank you, your Honor.  If it please

4  the Court, I do have a pretrial services report that was handed

5  to me just before this proceeding began and, you know, I do

6  note that on the last page of the report it indicates, well,

7  that bail is contraindicated in this situation.

8      I realize that under 18, U.S.C., 3142(g) that we're

9  permitted an opportunity to provide evidence that -- or some

10  kind of proof that bail would be indicated, and I believe in

11  this situation that I have can produce some things.  The first

12  thing I'd like to talk about is that Mr. Richards has lived at

13  the same address in the Bronx, not far from where I live, for

14  his entire life.  He has his family there.  His mother lives

15  there.  He has a child there, two years of age, in addition to

16  the mother of the child who he's been with for the past five

17  years.

18      He has a very strong support group of familial -- he

19  has an older brother, two older sisters, all college graduates

20  who hail from the Bronx as well.  The brother lives in Troy,

21  the sister lives in Florida, but they've been very supportive

22  throughout this.  As your Honor knows, this case has been going

23  on since June of 2014.  It's been litigated in the State court,

24  and we have what's called the Osborne Group, which is an

25  organization in New York that's funded by the City that assists

F8VPMCLA

1    attorneys with providing information on indigent or

2    near-indigent defendants with respect to their candidacy for

3    various programs that are alternatives to incarceration, and in

4    this case, an alternative to detention.

5          We were before Justice Iacovetta in Supreme Bronx and

6    there was very strong indication that he was going to go --

7    that he was going to allow us to do that, at least for the

8    time, you know, up until the time of trial.  I did have the --

9    initially when he was arrested in the Bronx, his bail was -- I

10   believe it was 150 over 75,000, and we had it reduced down to

11   $50,000 dollars under Justice Leak.

12         Unfortunately, that amount is way out of the ballpark

13   for Mr. Richards' family, and in the event that the Court

14   determines that the detention is appropriate, whether it be

15   released on his own recognizance is contraindicated, that we

16   get a more reasonable bail amount.  So the amount, if I could

17   just suggest it without offending the Court or the prosecution,

18   an amount of $10,000, if the Court deems it inappropriate to

19   release him on his own recognizance.

20         And I would like -- I did serve a copy of the

21   pre-pleading memorandum prepared by the Osborne Group for

22   Justice Iacovetta to the prosecution, if I could hand it up and

23   file it electronically with the Court at this time, I would

24   like to do that very much.

25         THE COURT:  Yes, you can hand it up.

F8VPMCLA

1        MR. NOHAVICKA:  You'll see very quickly that the

2   pre-pleading memorandum prepared by the Osborne Group is

3   antithetically opposed and diametrically opposed to the report

4   that was prepared, with all due respect, to the services

5   provided by the Federal Court.  They just haven't had the time

6   to conduct the investigation that the Osborne Group has

7   conducted.

8        They spoke with the mother.  They spoke with the

9   girlfriend, the mother of the child.  They spoke with the

10  defendant himself.  It's a very, very comprehensive

11  investigation that was done.  You'll also see attached to the

12  memorandum is a letter from the brother just attesting to his

13  brother's candidacy for this kind of program.

14       In addition to the program called CASES, which is the

15  last document attached, showing that Mr. Richards qualified for

16  this out-of-court program, and as I said, even if it's during

17  the pending of the -- from now until the trial itself, and they

18  have very stringent reporting requirements and they keep a

19  close watch on him, in addition to the fact that the defendant

20  is 21 years old, doesn't have anywhere to go outside of

21  New York on his own.

22       It would appear to be a very strong indication that

23  bail should not be required, or if bail is set, that it be a

24  very, very small.  As I said, in this situation, he could never

25  afford and his family could never afford anywhere near the

F8VPMCLA

1    $50,000.

2              THE COURT:  All right.  Does the government wish to be

3    heard?

4              MR. SMITH:  Yes, your Honor, just briefly.  As your

5    Honor knows from the complaint in this case, the offenses with

6    which Mr. Richards has been charged involved -- or the facts

7    underlying those offenses involved a shooting on June 20th,

8    2014, within the 47th Precinct of the Bronx.  During that

9    shooting, as surveillance video from multiple angles show,

10   defendant Douglas McLarty fired approximately four shots at

11   another individual or group of individuals on the other side of

12   the street.

13             As a result of that shooting, a 16-year-old victim,

14   who was walking nearby, suffered graze wounds and was taken to

15   the hospital.  Relevant specifically to Mr. Richards, what the

16   surveillance shows is that Mr. Richards was there with

17   Mr. McLarty, and that as soon as Mr. McLarty fires those shots,

18   the surveillance video shows McLarty and Richards running

19   together.  McLarty hands the gun to Richards, and Mr. Richards

20   attempts to flee from the police.

21             A couple of things about the fleeing.  While the video

22   show him holding his gun in the right hand, holding it at the

23   actual handle of the right and running down the road with the

24   gun in his right hand, he actually runs past a couple of

25   individuals at a bodega with the gun brandished in his hand as

F8VPMCLA

1    he runs from the police, who arrived in a marked vehicle with

2    the lights flashing.

3         The complaint also indicates that at least one

4    cooperating witness has identified both Mr. Richards and

5    Mr. McLarty as members of a street gang that operates, among

6    other places, in that very area.  And so it is particularly

7    troubling, I think, under the circumstances, that this is a

8    shooting that involved two fellow members of a gang and that a

9    16-year-old victim was harmed as a result.

10        The complaint also indicates that this is a shooting

11   that occurred less than half a block away from a kindergarten,

12   and there's a middle school just on the other side of the

13   block, highlighting even more the seriousness of this offense.

14        Just a few things about Mr. Richards himself.  I found

15   it actually telling that defense counsel said nothing about the

16   circumstances of the crime, which are very serious, and I think

17   those circumstances themselves very strongly weigh toward

18   detention in this case.

19        More broadly, just a couple of things about

20   background.  Defense counsel referred to State proceedings.

21   Just so your Honor is aware, both defendants had been detained

22   by the State, as I believe Mr. Richards' counsel acknowledged.

23   When the government decided to charge both of these individuals

24   by complaint, we arranged to have the State prosecutor agree to

25   the release of the defendants on the day that they appeared in

F8VPMCLA

1    court so that they could be taken into federal custody.  The

2    alternative being to put in a writ that would then have the

3    marshals bring them down here, which could have taken a little

4    more time.

5           So, in other words, these are two defendants that were

6    in State custody and were detained pending the resolution of

7    that State case.  And as your Honor was told, and as I believe

8    is correct, bail for Mr. Richards himself had initially been

9    set at $150,000 with a requirement of $75,000 of cash.

10   Mr. Nohavicka mentioned that it had been reduced to $50,000 at

11   one point as a security requirement.  I didn't see that on the

12   document, though -- on the docket sheet for the State case;

13   though, I don't have any reason to believe that that's not

14   true.

15          In any event, that was a bail determination made

16   taking into consideration just risk of flight, as I understand

17   is what the State standards are, and given the seriousness of

18   the offense here, I think pretrial services has it right, that

19   there are no circumstances that would support pretrial release.

20          I do think it's also telling that in the pretrial

21   report there's a reference to at least a couple of prior cases

22   where Mr. Richards was placed -- on at least in one case --

23   probation, eventually a bench warrant had to be issued.  This

24   is in connection with the 2011 robbery arrest that Mr. Richards

25   has.  It's the first arrest listed on Page 4 of the pretrial

F8VPMCLA

1    services report.  And Mr. Richards was adjudicated a youthful

2    offender, presumably based on some of the similar kinds of

3    arguments that defense counsel has made here about his youth

4    and about his family support, and then less than a

5    year-and-a-half later, a bench warrant was issued, probation

6    was revoked, and the defendant, having previously been given

7    probation, was resentenced to 45 days on the same charge.

8         A bench warrant was also issued in 2012 in connection

9    with the petit larceny and criminal possession that

10   Mr. Richards was arrested for in White Plains, and there's also

11   false impersonation charge.  So given both the seriousness of

12   the conduct in this case, the indications that one sees in the

13   history of interactions with law enforcement that the pretrial

14   services office details, and the fact that even in the State

15   Mr. Richards had been previously detained subject to the very

16   high security of $50,000, I agree with the pretrial services

17   office that there's no condition or set of conditions that

18   would adequately protect the safety of the community and ensure

19   the defendant's appearance in court in connection with this

20   case.

21        The only other thing, briefly, is the pretrial

22   services report does indicate that the defendant not only has

23   extended family in various other locations and countries, but

24   also that the defendant himself has traveled to those places as

25   well.  So while it is true that the defendant has been a

F8VPMCLA

1    life-long resident of the Bronx, this is not a situation in

2    which the defendant is someone who's never traveled away from

3    this area before.  So for all of those reasons, the government

4    believes that detention is appropriate.

5              THE COURT:  All right.  Is there anything that

6    pretrial services officer wishes to say?

7              MR. MOSCATO:  No, I have nothing to add.

8              MR. NOHAVICKA:  May I respond to that, your Honor?

9              THE COURT:  Yes, please.

10              MR. NOHAVICKA:  Thank you so much.  Just as far as the

11    incident takes place near a school, this happened in the

12    summertime, and it happened at about 11:20, 11:30 in the

13    evening.  There were no school children that were exposed.  I

14    understand the statute doesn't mention anything temporally but,

15    you know, the statute was meant to protect a certain group of

16    people.  That group of people are nonexistent, are not going to

17    be anywhere near it.  Then it turns the statute on its head if

18    you're going to use it to enhance something that he is already

19    charged with.

20              With respect to the robbery up in White Plains, that

21    was a shoplifting charge, your Honor.  So, I mean, if we're

22    talking about safety to the community, there's a big difference

23    between, you know, stealing a can of beans and hitting somebody

24    over the head with a can of beans, you know, if that's the

25    distinction that the government is making in this case.

F8VPMCLA

1          And, also, I just would like to add that we do have

2   family members here on behalf of Mr. Richards, in the event

3   that the Court determines that bail is appropriate and the

4   Court secures his release, that he has somebody to go to

5   immediately.

6          And having said that, I just want to reiterate the

7   effect is that I meant no offense to the pretrial services.

8   They're very important, and I respect their work very much, but

9   I do have -- and I submitted to the Court a more comprehensive

10  study that was done on the defendant, and if pretrial services

11  under the Federal Court had the time, I have no doubt they

12  would have come to the same conclusion.  Thank you, your Honor.

13          THE COURT:  All right.  Under Title 18, United States

14  Code, Section 3142(g), I'm directed to consider the following

15  factors in determining whether pretrial release is appropriate.

16  First, the nature and circumstances of the offense charged,

17  including whether the offense is a crime of violence or

18  involves a firearm; the weight of the evidence against the

19  defendant; the defendant's history and characteristics

20  including his character, physical and mental condition, family

21  ties, employment, financial resources, length of residence in

22  the community, community ties, past conduct, history relating

23  to drug or alcohol abuse, criminal history and record

24  concerning appearance at court proceedings; also, whether at

25  the time of the current offense the defendant was on probation,

F8VPMCLA

1    on parole or on other release pending trial, sentencing, appeal

2    or completion of sentence for an offense under federal, state

3    or local law; and, finally, the nature and seriousness of the

4    danger to any person in the community that would be posed by

5    the defendant's release.

6            The pretrial services office has concluded that there

7    are no conditions or combination of conditions that will

8    reasonably assure the appearance of the defendant as required

9    and the safety of the community.  Accordingly, the pretrial

10   services office recommends that Mr. Richards be detained

11   pending trial.

12           Beginning with the nature and circumstances of the

13   offense, Mr. Richards was arrested by the NYPD on June 20th,

14   2014; however, he was brought into federal custody on

15   July 20th, 2015, and was charged with conspiring to commit a

16   felon-in-possession offense, in violation of 18, United States

17   Code, Section 371; also, a violation of 18, United States Code,

18   Section 922(q)(2)(A), which relates to knowingly possession of

19   a firearm within a thousand feet of a school.

20           The complaint indicates that between 11:00 p.m. and

21   midnight on June 20th, 2014, an altercation took place in the

22   area of East 216th Street and White Plains Road in the Bronx.

23   Five shots were fired.  The government's theory is that

24   defendant McLarty fired the weapon and then gave the firearm to

25   Richards.  Richards was chased by the police and disposed of

F8VPMCLA

 1  the weapon, a .45 caliber pistol, shortly before his arrest.

 2  The police recovered the pistol, however.

 3       The complaint goes on to allege that McLarty and

 4  Richards are part of a gang that operates in the neighborhood

 5  and that Richards would have known that McLarty was a felon.

 6       Given that Mr. Richards is charged with possessing a

 7  firearm that was involved in a recent shooting, this case

 8  presents the issue of danger to the community.  Based on what

 9  has been submitted to me, I conclude that the weight of the

10  evidence on the possession count appears strong.  According to

11  the government, both testimony from a police officer and a

12  surveillance video demonstrate that Mr. Richards took the

13  firearm from Mr. McLarty.

14       Given Mr. Richards' lifelong residence in the

15  neighborhood and the number of prior arrests in the

16  neighborhood, it is reasonable to infer that he was aware of

17  the schools in the neighborhood.

18       The weight of the evidence on the conspiracy count is

19  not as clear.  It's not apparent to me how the government will

20  prove that Richards and McLarty entered into a conspiracy to

21  have McLarty possess the gun, nor is it clear how the

22  government will prove that Mr. Richards knew that Mr. McLarty

23  was a felon.  The government has an informant who will say that

24  the two belong to the same gang, and the government also

25  intends to argue that because McLarty was on parole from his

F8VPMCLA

attempted murder conviction and was wearing a GPS monitoring

device on his ankle, Richards must have been aware of McLarty's

prior felon conviction.  In any event, based on the evidence

currently before me, I cannot find that evidence on the

conspiracy count is particularly strong.

With respect to Mr. Richards' personal history and

characteristics, he has lived in the Bronx at his mother's

apartment for his entire life of 21 years.  The defendant has,

in addition to his mother, other ties with the community,

including a girlfriend, a daughter and a sister.  He has

siblings also in Troy, New York, and in Florida, and he has

extended family outside this country, including in Canada,

Barbados and Grenada.

As to employment, the defendant was unemployed at the

time of his arrest.  He has worked briefly as a counselor at a

church and at McDonald's.  He has no financial assets and is

financially supported by his mother, who I understand to be a

nurse at Bronx Lebanon Hospital.

The defendant reported that he occasionally used

alcohol and had used marijuana on a daily basis from the age of

16 until about a year ago.

As to criminal record, the defendant has two youthful

offender convictions for petit larceny, both misdemeanors.  The

first was in 2011, the second in 2013.  He received a sentence

of three years' probation on the 2011 conviction and six

F8VPMCLA

months' incarceration on the 2013 case.  Mr. Richards had bench

warrants issued in both cases.  His probation in the 2011 case

was revoked based on his 2013 conviction.

In February of 2013, Mr. Richards was convicted of

false impersonation, another misdemeanor.  He was sentenced to

time served.

As to whether or not the legal standards here have

been met as to detention, the standard for finding that a

defendant poses a danger to the community is clear and

convincing evidence.  I conclude that the government has not

met that standard here.

While there's evidence that Richards took the firearm

from McLarty after McLarty had fired a number of shots, there's

no evidence that Richards ever fired the weapon, knew that

McLarty intended to fire the weapon or that Richards had ever

used the weapon in the past.  His criminal record does not

involve any crimes of violence.  He has three misdemeanor

convictions for petit larceny and false impersonation.

While the government has proffered that an informant

will testify that Richards and McLarty belong to a gang, this

does not constitute clear and convincing evidence that Richards

is a danger to the community.  Moreover, it is not clear to me

that the altercation here had anything to do with a gang.  The

victim says that she overheard a dispute about a phone.  Based

on this record, I cannot find that the government has

F8VPMCLA

1    demonstrated that there are no conditions that will ensure the

2    safety of the community if Mr. Richards is released on bail.

3         With respect to risk of flight, determinations

4    regarding risk of flight are governed by a preponderance of the

5    evidence standard.  The defendant has been a lifelong member of

6    the community.  He's lived with his mother that entire time,

7    that is to say, 21 years.  He has other close relationships in

8    the community, including his girlfriend, sister and daughter.

9    There are reasons for concern about risk of flight, however.

10        Mr. Richards has three prior convictions.  He's had

11   two bench warrants issued in the past.  He's violated probation

12   in the past, and he is facing a significant sentence if

13   convicted on the charges against him.  And, as I noted, the

14   evidence on the possession count appears strong to me.

15   Mr. Richards is also unemployed and has no assets, and he has

16   contacts outside of the country.

17        While I believe that a stringent bail package is

18   called for, I find that the government has not met its burden

19   of demonstrating by a preponderance of the evidence that there

20   are no conditions or combination of conditions that will ensure

21   Mr. Richards' return to court.

22        Accordingly, Mr. Richards will be released on the

23   following conditions:  a $250,000 personal recognizance bond,

24   cosigned by three financially responsible people and secured by

25   $10,000 in cash; home detention enforced by electronic

F8VPMCLA

1    monitoring.  Mr. Richards will live with his mother at 730 East

2    232nd Street, Apartment 5C, in the Bronx.  Also, strict

3    pretrial supervision, surrender of any travel documents, travel

4    restricted to the Southern District of New York.  All

5    conditions are to be satisfied prior to release.

6              Is there anything else?

7              MR. SMITH:  Nothing else from the government, your

8    Honor.

9              MR. NOHAVICKA:  Nothing by defendant Richards, your

10   Honor.

11             MR. WATTS:  Nothing, your Honor.

12             (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25